UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GYONGYVER JULIA KADAS, )<br>)<br>Plaintiff, )<br>)<br>)   No. _____<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Defendant. ) | |

# PETITION TO QUASH IRS SUMMONSES

The Petitioner, Gyongyver Julia Kadas, by her undersigned counsel, seeks to quash two summonses (the "HSBC Summonses") issued by the Internal Revenue Service (the "IRS") to HSBC Bank USA, N.A. ("HSBC") in connection with a treaty request allegedly made by the Spanish Tax Agency ("STA") with respect to the STA's examination of Petitioner's alleged Spanish tax liabilities. Petitioner, on personal knowledge as to her own activities and on information and belief as to the activities of others, states as follows:

## PARTIES

1.     Petitioner is an individual who has been a resident of the United Kingdom ("UK") since 2018. Petitioner is neither a U.S. citizen nor a U.S. resident.

2.     Respondent is the United States of America.

3.     The third-party summonses at issue were served on HSBC.

## JURISDICTION AND VENUE

4.     This proceeding is brought pursuant to 26 U.S.C. § 7609(b)(2) to quash the HSBC Summonses.

5. The IRS issued the HSBC Summonses on June 5, 2025 allegedly in connection with an examination by the STA into Petitioner's Spanish tax liabilities. A copy of the HSBC Summonses is attached as Exhibit A.

6. The IRS mailed notices of the HSBC Summonses to Petitioner on June 5, 2025.

7. This proceeding is brought within twenty (20) days after the IRS served notices of the HSBC Summonses on Petitioner. 26 U.S.C. § 7609(b)(2).

8. The person to be summoned, HSBC, is found in this judicial district. HSBC has offices in this judicial district, and the HSBC Summonses were addressed to HSBC at an address in this judicial district. Therefore, this Court has jurisdiction, and venue is proper in this district. 26 U.S.C. § 7609(h)(1).

9. Pursuant to 26 U.S.C. § 7609(b)(2)(B), notice of this Petition is being provided to HSBC and to the IRS officer (Twinnie W. Lee) named in the HSBC Summonses by certified mail and to the United States pursuant to Rule 4(i) of the Federal Rules of Civil Procedure.

## FACTUAL ALLEGATIONS

10. Petitioner is currently under examination by the STA for potential Spanish tax liability for the 2019 to 2022 tax years. Specifically, the STA asserts that Petitioner was a resident of Spain from 2019 to 2022. Beyond that, the STA has not disclosed to Petitioner what it is investigating or the reasons therefore.

11. Petitioner was a resident of the UK between 2019 and 2022.

12. The STA's assertion of Spanish residency is notwithstanding the fact that in November 2024, Petitioner provided the STA UK residency certificates from the UK tax authority (HMRC) demonstrating that Petitioner was a resident of the UK from April 2018 to

April 2020 and from April 2021 to April 2022.[1] These UK residency certificates are attached as Exhibit B.

13. These residency certificates are issued by the HRMC in connection with double taxation agreements signed by the UK, including the 2013 Spain-UK Double Taxation Convention. Under the treaty, Petitioner's UK residency certificates require Spain to treat Petitioner as a UK resident.

14. In April 2020, Petitioner was on vacation in Spain and subsequently was unable to leave Spain because of the stringent lockdown the Spanish government implemented during the COVID-19 pandemic. Petitioner returned to the UK after the lockdowns were lifted.

15. Contrary to relevant OECD guidance, Spain considered days of presence in Spain to determine the tax residence of individuals, regardless of whether that presence was due to the pandemic lockdown and other restrictions.

16. In order to avoid any tax risk, Petitioner took a conservative stance and decided to file a tax return as a resident of Spain for 2020, declaring all her income and assets as required. Petitioner did not obtain a UK residency certificate for 2020 due to Spain's approach with respect to residency because of her forced presence in Spain.

17. Spain's approach to residency during the pandemic was widely criticized and was ultimately reversed. The *Direccion General de Tributos* (Directorate General of Taxes) finally decided to adopt a more flexible approach, suggesting the applicable tax treaties (in this case, the treaty between Spain and the UK) should lead to the conclusion that the person concerned would retain the tax residence of the country of origin (here, the UK).

---

[1] The UK uses an April to April tax year instead of the calendar year.

18. As Spain has now decided to align itself with the OECD guidance in relation to the tax aspects of COVID-19, Petitioner will be taking steps to rectify her tax liability in Spain for the year 2020, consistent with the UK being Petitioner's country of residence from at least 2019 to 2022 and continuing to the present.

19. The HSBC Summonses seek detailed information regarding certain bank accounts at HSBC in the United States of which Petitioner allegedly had ownership, control, or signatory authority between January 1, 2019 and December 31, 2022.

20. These HSBC accounts were not used by Petitioner in connection with any expenses or activities in Spain.

21. Accordingly, Petitioner's U.S. HSBC account information has no bearing on whether she was a resident of Spain or the UK between 2019 and 2022.

22. The IRS has not provided any explanation to date of the purported relevance of the materials sought to the STA examination, or made any showing that the STA made a proper treaty request.

23. The HSBC Summonses imply that the STA made a request pursuant to the U.S.-Spain Tax Treaty for information from HSBC regarding Petitioner (the "STA Treaty Request"). The HSBC Summonses contain no direct information regarding the contents of the STA Treaty Request, so Petitioner is unable to evaluate the contents of that request, the ability of the STA to enforce such requests under Spanish law, and whether the HSBC Summonses fairly and accurately reflect the scope of the STA Treaty Request. Petitioner respectfully suggests that limited discovery is appropriate to obtain a copy of the STA Treaty Request, should the IRS decline to produce that document voluntarily.

**ARGUMENT**

24. In order to enforce a summons issued by the IRS, the Government must establish that it issued the summons in good faith. *United States v. Powell,* 379 U.S. 48, 58 (1964). To do so, the Government must show that: (1) the investigation is conducted pursuant to a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the information sought is not already in the Commissioner's possession; and (4) the administrative steps required by the Internal Revenue Code have been followed. *Id.* at 57-58. This standard applies to an IRS summons purportedly issued pursuant to a treaty request by a foreign government. *United States v. Stuart,* 489 U.S. 353, 361 (1989). To make its showing, the Government must typically submit a sworn affidavit of the investigating agent. *United States v. Clarke,* 573 U.S. 248, 250 (2014).

25. While the relevance standard in the context of an IRS summons is broad, "the information sought must meet some basic threshold of relevance because the United States must make a prima facie case that the information it seeks is potentially relevant." *Wells Fargo & Co. v. United States*, 2013 WL 2444639, at *42 (D. Minn. 2013). "Further, the summons should be no broader than necessary to achieve its purpose." *United States v. Payward Ventures, Inc.*, No. 23-mc-80029-JCS, 2023 WL 4303653 (N.D. Cal. 2023) (citation and internal quotation marks omitted).

26. Here, the IRS will be unable to meet its burden to establish it is seeking information and records relevant to a legitimate purpose under *Powell*.

27. The HSBC Summonses request information that is not foreseeably relevant to the STA audit. Therefore, the IRS cannot establish a *prima facie* case for enforcement as to that information. Further, the information requested in the HSBC Summonses is contrary to Spanish and European Union law.

28. Upon information and belief, the HSBC Summonses are purportedly directed at establishing the Petitioner's alleged tax residency in Spain between 2019 and 2022.

29. On March 12, 2025, the European Commission stated that it had decided to bring an action before the Court of Justice of the European Union against Spain for its discriminatory tax treatment of non-resident taxpayers.[2]

30. The Spanish Supreme Court has held that foreign tax-residency certificates like the UK residency certificates held by Petitioner establish a presumption of foreign tax residency, and that any challenges to this presumption must be made pursuant to the provisions of the applicable tax treaty. STS No. 778/2023, 12 June 2023, ECLI:ES:TS:2023:2735.

31. Instead of engaging in the mandated treaty process with the UK, the STA issued requests for unrelated information in Petitioner's U.S. bank accounts at HSBC.

32. The U.S. HSBC accounts are not relevant to the STA's examination because they were not used by Petitioner in connection with any activities in Spain.

33. The IRS cannot provide the information sought in the HSBC Summonses because it does not comply with the requirements of the U.S.-Spain Tax Treaty.

34. The U.S.-Spain Tax Treaty Article 27(1) provides for information exchange "as is foreseeably relevant" for carrying out the treaty or the administration or enforcement of the countries' domestic tax laws.

35. The Treasury Department Technical Explanation of the U.S.-Spain Tax Treaty (the Treasury Department's official explanation of the treaty) states: "Contracting States are not

---

[2] "Commission decides to refer SPAIN to the Court of Justice of the European Union due to discriminatory tax treatment of non-resident taxpayers," European Commission (Mar. 11 2025), *available at*: https://ec.europa.eu/commission/presscorner/detail/en/ip_25_667.

at liberty to engage in 'fishing expeditions' or otherwise to request information that is unlikely to be relevant to the tax affairs of a given taxpayer."[3] (emphasis added).

36.     The IRS's Internal Revenue Manual (instructions to IRS staff that explains IRS policies and procedures) echoes this standard: "While the standard of foreseeable relevance is intended to provide for exchange of information in tax matters to the widest possible extent, jurisdictions are not at liberty to engage in 'fishing expeditions' or to request information that is unlikely to be relevant to the tax affairs of a given taxpayer. The international standard requires that at the time a request is made, there is a reasonable possibility that the requested information will be relevant." Internal Revenue Manual § 4.60.1-2.

37.     IRS employees handling requests from foreign governments (i.e., EOI analysts) are directed to ensure the request includes "a description of the requested information's 'foreseeable relevance' to the foreign examination, investigation or procedure, i.e., an explanation of how the requested information would be pertinent to the administration or enforcement of the foreign taxes at issue." Internal Revenue Manual § 4.60.1.2.2 (3)(l).

38.     The HSBC Summonses constitute an impermissible fishing expedition. The requested material cannot lead to a determination of whether Petitioner was a resident of Spain in 2019 through 2022.

39.     The information requested in the HSBC Summonses is also overbroad and impermissible under U.S. law.

---

[3] The "foreseeably relevant" standard is also used in the OECD Model Convention. Paragraph 5 of the OECD Model Commentary on article 26(1) of the OECD Model Convention also explains the "foreseeably relevant" standard as "clarify[ing] that Contracting States are not at liberty to engage in 'fishing expeditions' or to request information that is unlikely to be relevant to the tax affairs of a given taxpayer."

40. Several of the categories of the information requested in the HSBC Summonses are sought "regardless of date," thereby pre- and post-dating the years of the STA audit.

41. A summons is overbroad if it seeks information regarding tax years that are not under investigation. *See, e.g.*, *Muratore v. Dep't of Treasury*, 315 F. Supp. 2d 305, 313 (W.D.N.Y. 2004) ("[A]t some point, the temporal distance from the period under investigation becomes so great that even that minimal relevancy threshold cannot be met.").

42. Information that is dated several years prior to 2019 or after 2022 does not shed light on whether Petitioner was a resident of Spain from 2019 to 2022.

43. The HSBC Summonses also request records which are not "information" within the meaning of the U.S.-Spain Tax Treaty Article 27(1). Both HSBC Summonses request Know-Your-Customer ("KYC") and Customer Due Diligence ("CDD") records, regardless of date.

44. KYC files and CDD files contain details that do not conform to the accepted definition of information because they have not been shared with the client for confirmation or verification. These files are regarded by the financial institution as confidential, because they contain evidence of subjective judgements, unconfirmed analysis, and assessments made by staff. A significant part of the contents of these files will not have been audited or otherwise verified within the financial institution and not shared with third parties for verification. Accordingly, KYC and CDD files may contain unreliable information and conjecture.

45. Rather than requesting relevant information, it appears the STA is seeking the summoned material for the improper purpose of "harass[ing] the taxpayer or . . . put[ting] pressure on [her] to settle a collateral dispute." *Powell*, 379 U.S. at 58.

46. Upon information and belief, the STA has engaged in a systemic pattern of bad faith practices aimed at increasing tax revenues, including, *inter alia*:

      (i)        STA staff are incentivized to assess additional revenue by an opaque system of bonus schemes based on the amount of the tax assessed, not the amount collected; and

      (ii)        The STA engages in global fishing expeditions to exorbitantly increase the costs of defense to discourage taxpayers from defending their positions. In the case of Petitioner, the STA has already sought discovery in multiple foreign jurisdictions, based on similar blunderbuss exchange of information requests.

      47.        Further, the IRS's disclosure of the information requested in the HSBC Summonses potentially violates 26 U.S.C. § 6103. Section 6103 prohibits the IRS from disclosing return information. Return information is defined broadly to cover the information requested in the HSBC Summons. *See* 26 U.S.C. § 6103(b)(2) (defining "return information" to include a taxpayer's "nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth").

      48.        Additionally, the U.S.-Spain Tax Treaty Article 27(2) requires information exchanged to be "treated as secret" and used only for tax purposes (or other purposes as agreed and under certain conditions).

      49.        The STA has a demonstrated history of disclosing taxpayer information, including publishing a "blacklist" of so-called tax debtors. Because a taxpayer is required to pay all tax in full even if the assessment is being appealed, taxpayers will pay the tax to avoid material harm to their reputations.

      50.        26 U.S.C. § 7431(a)(1) authorizes a taxpayer to sue for the knowing or negligent disclosure of tax return information in violation of 26 U.S.C. § 6103. In addition, criminal penalties may be imposed on the IRS official responsible for the disclosure pursuant to 26 U.SC. § 7213.

51. Given the STA's propensity to disclose return information, the IRS's disclosure of the information requested in the HSBC Summonses to the STA could violate these statutes and is prohibited by the U.S.-Spain Tax Treaty Article 27(2).

52. The U.S.-Spain Tax Treaty Article 27(3) states that in no case is a country obligated to (a) carry out administrative measures at variance with the laws and administrative practices of that country or the requesting country, (b) to supply information that is not obtainable under the laws or in the normal course of the administration of either country, or (c) to supply information that would disclose any trade, business, industrial, commercial, or professional secret or trade process or information "the disclosure of which would be contrary to public policy."

53. Under the U.S.-Spain Tax Treaty, the IRS is not obligated to disclose the information sought in the HSBC Summonses.

54. Petitioner request that should HSBC not agree to retain the summoned documents until a final judgment is entered in this action, the Court enter an order restraining HSBC from producing, and the IRS from receiving or conveying to the STA, any of those documents until entry of a final judgment.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Petitioner respectfully requests that the Court grant the following relief:

 i. If necessary, hold an evidentiary hearing and authorize limited discovery;

 ii. Issue an order quashing the HSBC Summonses;

 iii. If necessary, issue an order enjoining and restraining the IRS from obtaining, and HSBC from producing, the summoned documents while this action remains pending;

 iv. Award Petitioner costs and disbursements; and

 v. Award Petitioner such other and further relief as this Court deems just and proper.

- 11 -

Dated this 26th day of June 2025.

                                          Respectfully submitted,

                                          */s/ Chris Paparella*
                                          Chris Paparella
                                          Lawrence M. Hill (*pro hac vice forthcoming*)
                                          STEPTOE LLP
                                          1114 Avenue of the Americas
                                          New York, NY 10036
                                          Telephone: (212) 506-3900
                                          cpaparella@steptoe.com
                                          lhill@steptoe.com
                                          *Attorneys for Petitioner*